**In re Denise M. BANKS, Debtor.**

**No. 00–44464–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 9, 2000.

William Orlow, Pleasant Ridge, for Debtor.

Louis P. Rochkind, Detroit, for Creditor.

David Wm. Ruskin, Southfield, Chapter 13 Trustee.

Supplemental Opinion

STEVEN W. RHODES, Bankruptcy Judge.

Having once converted her case from chapter 13 to chapter 7, the debtor requests re-conversion of her case to chapter 13. A creditor objects, arguing that re-conversion is prohibited by 11 U.S.C. § 706(a). The Court holds that although the statute is subject to interpretation, it appears that the congressional intent was to prohibit re-conversion to chapter 13 in these circumstances. Accordingly, the debtor's motion to re-convert is denied.

This opinion supplements an opinion given on the record in open court on July 31, 2000.

I.

Denise M. Banks originally filed a chapter 13 petition. At the confirmation hearing on June 15, 2000, the debtor's chapter 13 plan was not confirmable because she had failed to file 1992–1999 income tax returns. The debtor requested and the Court granted conversion of the case to chapter 7. On June 28, 2000, the debtor filed a motion to re-convert the case to chapter 13. Ralph R. Roberts Real Estate, a creditor, objected to the re-conversion of the case, arguing that the plain language of 11 U.S.C. § 706(a) prohibits conversion of a chapter 7 case to chapter 13 if the case had previously been converted from chapter 13 to chapter 7.

II.

Section 706(a) provides:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

The cases are divided on the issue of whether a case previously converted to chapter 7 may be re-converted to chapter 11, 12, or 13. The cases fall into three categories. Cases holding that § 706(a) bars re-conversion include: *In re Carter,* 84 B.R. 744, 748 (D.Kan.1988); *In re Vitti,* 132 B.R. 229, 231 (Bankr.D.Conn.1991); *In re Bryan,* 109 B.R. 534, (Bankr.D.D.C. 1990); *In re Hanna,* 100 B.R. 591, 594 (Bankr.M.D.Fla.1989); *In re Richardson,* 43 B.R. 636, 638 (Bankr.M.D.Fla.1984); and *In re Ghosh,* 38 B.R. 600, 603 (Bankr. E.D.N.Y.1984).

Cases holding that the court has discretion to permit re-conversion, but denying re-conversion based on the facts of the case include: *In re Somers Corp.,* 123 B.R. 35, 37 (Bankr.N.D.Ohio 1990); *In re Johnson,* 116 B.R. 224, 227 (Bankr.D.Idaho 1990); *In re Trevino,* 78 B.R. 29, 32 (Bankr.M.D.Pa.1987); and *In re Walker,* 77 B.R. 803, 805 (Bankr.D.Nev.1987).

Finally, cases holding that re-conversion is discretionary and allowing re-conversion based on the facts of the case include: *In re Masterson,* 141 B.R. 84 (Bankr.E.D.Pa. 1992); *In re Hollar,* 70 B.R. 337, 338 (Bankr.E.D.Tenn.1987); and *In re Sensibaugh,* 9 B.R. 45, 47 (Bankr.E.D.Va.1981).

### III.

Many of the decisions holding that § 706(a) bars re-conversion of a case conclude that the plain language of this section requires that result. *Richardson,* 43 B.R. at 638; *Ghosh,* 38 B.R. at 603; *Vitti,* 132 B.R. at 230.

> Unfortunately, for the debtor, the language of Section 706 clearly bars a debtor from converting a case from Chapter 7 to Chapter 13 more than once. Subsection (a) of that section states in relevant part that a "debtor may convert a case under this chapter to a case under Chapter 11 or 13 of this title at any time, if the case has not been converted under Section 1112 or 1307 of this title." The language of this statute is not discretionary. By its plain meaning it bars the debtor from this second attempt at conversion.

*Ghosh,* 38 B.R. at 603 (footnote omitted).

However, at least two courts holding that § 706(a) bars re-conversion also considered the legislative history of the statute. *Vitti,* 132 B.R. at 230, *Hanna,* 100 B.R. at 593. In fact, in *Hanna* the court appears to concede that the language of the statute is not plain.

> At first blush, it appears that reconversion to Chapter 13 is strictly prohibited. However, the statute may also be read to suggest that debtor loses only the "absolute" right to convert to Chapter 13 after having previously converted to Chapter 7 under § 1112, § 1208, or § 1307 of the Bankruptcy Code. Consequently, the courts addressing this issue have often reached different results.

*Id.* at 592.

Indeed, other courts have interpreted the statute as "allowing a second conversion but only after a notice and hearing at which the Debtor's circumstances must be carefully scrutinized, instead of, as in the case of an initial conversion, being allowed to convert a Chapter 7 case to another Chapter as of right." *Masterson,* 141 B.R. at 87–88. These courts have cited two reasons for this interpretation. First, they cite the legislative history in support of the interpretation that § 706(a) provides a one-time absolute right to convert. Second, these courts find in § 706(c) a right to convert subject to the court's discretion. That subsection provides, "The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests such conversion."

For example, in *Johnson*, the court stated, "Obviously, in reviewing subsection (c), implied, if not expressed, within its terms is the authority for the Court to convert a case from Chapter 7 to Chapter 13 upon motion of an interested party, such as the debtor." 116 B.R. at 225. Decisions in this line hold that if § 706(a) is read to bar any reconversion of a chapter 7 case, § 706(c) is rendered meaningless.

### IV.

The Court concludes that subsection (a) does contain some ambiguity in that it only addresses the debtor's rights if there has not been a previous conversion (i.e., the debtor may convert the case to chapter 13); it does not explicitly address the debtor's rights if there has been a previous conversion. Similarly, subsection (c) contains some further ambiguity in that it only becomes operative if the debtor does not request conversion (i.e., the court may not convert the case to chapter 13); it does not explicitly address the debtor's rights if the debtor does request conversion. Therefore neither subsection (a) nor subsection (c) establishes the debtor's rights if the case was previous converted at the debtor's request.

Subsection (c) can be read as a further limitation on subsections (a) and (b), to the effect that although a party in interest may request conversion to chapter 11 under subsection (b), only the debtor may request conversion to chapter 13 pursuant to the terms of subsection (a). On the other hand, subsection (c) can be read as containing an implicit authority for the court to convert the case at the debtor's request under terms similar to the terms of subsection (b).

■ Accordingly, it is appropriate to look to the legislative history in an attempt to determine the congressional intent. *Koenig Sporting Goods v. Morse Rd. Co. (In re Koenig Sporting Goods)*, 203 F.3d 986, 988 (6th Cir.2000) ("When a statute is ambiguous, we look to its purpose and may consider the statute's policy implications in determining what Congress intended."); *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir.1991) (When a statute is unambiguous, resort to legislative history and policy considerations is improper.). "The objective of statutory construction is to 'ascertain the intent of Congress.'" *Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 798 (6th Cir.1989) (citing *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975)).

### V.

Unfortunately, "[t]he legislative history to these particular Code provisions is also less than clear[.]" *Johnson*, 116 B.R. at 225. The legislative comments which accompany this section read as follows:

Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 5963, 6336 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 5787, 5880 (1978). Some courts cite this legislative history as support for allowing re-conversion of a case to chapter 13 at the debtor's request, subject to the court's discretion, based on an interpretation that only the absolute right of conversion is lost if there has been a prior conversion. *Walker*, 77 B.R. at 804–05. Other courts find that this legislative history indicates that Congress did not intend to allow re-conversion of a case to chapter 13.

The legislative history of § 706(a) clearly supports the interpretation that a debtor's right to convert is lost once it has been exercised. As stated in *In re Carter*, 84 B.R. 744, 747 (D.Kan.1988), "the use of 'absolute' in the legislative

history has been accorded undue significance by those courts finding a discretionary right. Congress' effort to specify an unconditional right of conversion for debtors also supports a reasonable inference that a debtor's right to convert under § 706(a) is limited to a single opportunity."

*Hanna,* 100 B.R. at 593–94.

The legislative history refers to a "one-time absolute right to convert." It further states that if the case had been previously converted, the debtor does not have *that* right. (Emphasis added.) The legislative history does not shed light on whether the right that is lost is a right to request conversion in the court's discretion or an absolute right to convert. Indeed, nothing in the legislative history refers to either a strict prohibition against re-conversion by right or against re-conversion in the court's discretion. The legislative history regarding subsection (c) only mentions that it is part of the prohibition against involuntary chapter 13 cases. The legislative history regarding subsection (b) is the only place a which mentions a court's discretionary right to order conversion.

The lack of clarity in the legislative history allows both sides to cite it in support of their respective positions. The Court concludes that because there is no discussion in the legislative history that subsection (c) itself was intended to establish a right of re-conversion that is subject to the court's discretion, it is more likely that Congress did not intend subsection (c) to create such a right and did intend subsection (a) to prohibit re-conversion.

## VI.

■ Rules of statutory construction require that a statute be read as a whole so as to give each subsection meaning. Some courts finding a right to re-convert in the court's discretion argue that if subsection (a) is read as prohibiting reconversion, subsection (c) is rendered meaningless. *Sensibaugh,* 9 B.R. at 46. Other courts reject the argument that § 706(c) is ren-

dered meaningless if § 706(a) is read as prohibiting re-conversion to chapter 13.

Section 706(c) does not carve out an exception to § 706(a) but rather, as noted in the legislative history, ". . . is part of the prohibition against involuntary Chapter 13 cases, and prohibits the Court from converting a case to a Chapter 13 without the debtor's consent." Clearly, a literal reading of § 706(a) does not, as these Debtors suggest render § 706(c) meaningless.

*Richardson,* 43 B.R. at 638 (citation omitted).

■ The Court agrees with *Richardson.* Looking at both the language of the statute and the legislative history, it appears that Congress intended to give debtors a one-time right to convert, which is provided for in § 706(a). Although the legislative history is not completely clear, it appears that Congress did not intend for the court to have the discretion to permit conversion of a case to chapter 13 if there had been a previous conversion. Subsection (a) establishes that a debtor has a right to convert, if there has not been a prior conversion. The legislative history suggests that this is an absolute right if the debtor is eligible for the chapter to which the debtor intends to convert. Subsection (b) provides the court with discretionary authority to convert the case to chapter 11 at the request of a party in interest. Subsection (c) provides that a party in interest cannot request conversion to chapter 12 or 13. As the legislative history explains, subsection (c) is simply part of the prohibition against involuntary chapter 13. Finally, subsection (d) also simply serves as a restatement that § 706 cannot be used to circumvent the eligibility requirements of § 109. Reading subsection (a) as prohibiting a debtor from converting the case if there has been a prior conversion does not render any other subsection of § 706 meaningless.

## VII.

Therefore, the Court concludes that "a debtor's right to convert is lost once it has

been exercised." *Hanna,* 100 B.R. at 593. The Court adopts this reasoning in *Hanna:*

> The decision to limit the right of conversion to a single opportunity is well reasoned. More specifically, it bars repeated attempts to convert which could otherwise delay the proceedings.... While it can be argued that making the right to convert discretionary with the court would curb the possible abuse of repeated conversions, such an interpretation would not prevent repeated attempts to convert. The harm of delay remains a real possibility with a discretionary right to convert, since a hearing upon due notice would be required in each instance to evaluate the debtor's motive and other relevant considerations.
>
> Obviously, Congress in granting the debtors a single chance to convert struck a balance between the competing policy of the debtor's opportunity to repay and the potential disadvantage of delay caused by repeated attempts to convert. Surely, Congress considered the goal of finality to be paramount to the goal of repayment.

*Hanna,* 100 B.R. at 594.

If Congress had intended to give debtors a one time guaranteed right to convert and an additional right to request re-conversion in the court's discretion, it would have done so much more explicitly. In addition, Congress would have provided a statutory standard by which courts could determine whether to allow re-conversion. However, neither the language of the statute nor the legislative history make such an intention or such a standard clear. Rather, the legislative history for subsection (a) seems to address when a debtor may request conversion, and then for subsection (b), when a creditor or party in interest may request conversion. The legislative history indicates little more than that subsections (c) and (d) are intended to serve as limits on the earlier subsections.

Accordingly, the creditor's objection to the debtor's motion to re-convert is sustained and the debtor's motion to re-convert is denied.